IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| KAY CHRISTENSEN, | ) | Case No. 05-47727-drd |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MAMIE JOAN CHRISTENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-4076 |
| | ) | |
| KAY CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court on the complaint of Plaintiff Mamie Joan Christensen to determine the dischargeability of her claims against the Debtor Kay Christensen under § 523(a)(5) and (a)(15) of the Bankruptcy Code. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(I). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that balance due Plaintiff for the costs of unreimbursed medical expenses for care provided to her children is nondischargeable as support under § 523(a)(5) and that the Debtor has failed to satisfy his burden of proving that he lacks the ability to pay the debts or that the benefit to the Debtor of discharging the debts outweighs the

detriment to his ex-spouse and that the debts are therefore nondischargeable pursuant to § 523(a)(15).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and Defendant were married in April 1998. No children were born to them during their marriage, although Plaintiff had seven children who were adopted by Debtor during the course of their marriage. Their marriage was dissolved on August 3, 2004 pursuant to a Decree of Dissolution of Marriage which granted custody to Plaintiff of the children who now range in age from 11 to 21. Plaintiff lives with six of the children, the other being a student at the University of Missouri. Pursuant to the original Decree of Dissolution, Debtor was to pay child support in the agreed amount of $2,500.00 per month. Although the presumed amount of child support pursuant to applicable guidelines would have been $2,700.00, it was reduced based on the Debtor's agreement to maintain health insurance and pay 80% of unreimbursed medical expenses for the children. Based on certain changed circumstances, the parties later agreed to modify those obligations which agreement was contained in a Judgment of Modification entered by the Court on June 16, 2005. Pursuant to that order, the amount of monthly child support was reduced to $1,400.00 per month. At the time, Debtor was in arrears a substantial amount on the child support. Plaintiff agreed to accept the sum of $6,350.00 in satisfaction of the claim, $5,000.00 of which was to be paid immediately in cash. The balance was to be paid at the rate of $100.00 per month. The order also incorporated an agreement with respect to defaults by the Debtor in payment of unreimbursed medical expenses in the amount of $1,520.48 which Debtor was ordered to pay at the rate of $100.00 per month. That amount has apparently since been satisfied.

Plaintiff seeks this Court's order determining the remaining obligations due to her pursuant

to the Decree of Dissolution as modified are nondischargeable. Among those obligations is an orthodontist bill for three of the children, originally in the amount of $4,100.00, now reduced to approximately $2,800.00. The Decree of Dissolution also contained an indemnification and hold harmless agreement for a claim held by Blue Ridge Bank, secured by a lien on a Chevrolet Suburban. At the time of the Decree, the debt was approximately $11,000.00, which according to the testimony was in excess of the value of the vehicle, additional indebtedness of Debtor having been rolled into the obligation. Initially, Debtor provided a monthly check to Plaintiff to be sent to the bank, but later began making the payments directly. At some point, Debtor defaulted and Plaintiff learned in September of 2005 that the bank was seeking to enforce the debt. She surrendered the vehicle which was sold by the bank, leaving a deficiency of $5,398.45, which the bank has demanded be paid by Plaintiff. Finally, the Decree specifies that the parties would sell a tract of real estate owned by Plaintiff and that Debtor would pay any deficiency on liens secured by the property after the sale and would pay an additional sum of $15,000.00 for property equalization. A portion of the $15,000.00 has been paid. According to the testimony at trial, approximately $11,000.00 remains due on this obligation.

Plaintiff is a teacher with the North Kansas City School District having secured that position at approximately the same time as the entry of the Decree of Dissolution. Her salary at NKC is approximately $35,000.00 per year paid over a period of 12 months. She also works part-time tutoring at a community college an average of two to four evenings per week during eight months of the year for which she is paid hourly. In addition, Plaintiff has secured a third job delivering pizzas on weekends, approximately 15 hours per week for which she is paid $6.00 per hour and earns tips of approximately $40.00 per night. Her combined net monthly income, including the

3

additional amount she earns from pizza delivery is approximately $2,700.00 per month,[1] although she testified that she has now begun to incur a monthly expense of approximately $400.00 (being deducted from her check) for health insurance on the children which she must now carry pursuant to the terms of the modification. Plaintiff's 2005 federal income tax return showed an adjusted gross income of approximately $22,000.00. She testified that her income in 2006 will be slightly higher. In addition, the return shows a refund of $4,711.00, providing approximately an additional $400.00 per month average income. The income and expense statement submitted by Plaintiff in connection with the modification proceeding indicates monthly expenses of $5,732.00 per month. Plaintiff testified that those expenses have changed in certain ways in that she now incurs an additional $100.00 expense for vision care. Also, she is no longer making a $500.00 monthly payment on an automobile, although she testified she believes she will need to incur a similar expense in the near future. In addition, her auto insurance expense has now declined from $400 to $260.00 per month. Accordingly, her present monthly expenses total approximately $5,192.00, leaving her with a negative net income of approximately $2,426.28.[2]

---

[1] According to Plaintiff's Exhibit 4, the Income and Expense Statement of Petitioner submitted in connection with the dissolution action, Plaintiff's gross monthly income from her NKC teaching position and her tutoring was $2,901.31 per month. Her net take-home pay from the teaching position was $2,156.72. Combined with her average monthly additional income of $209.00 from tutoring, her net monthly income from these two employments was $2,365.72. Adding the $400.00 a month she estimates she receives from pizza delivery, her combined net monthly income is $2,765.72.

[2] The Court calculates this as follows: Plaintiff's net monthly income from her teaching position and tutoring is $2,365.72. Adding $400.00 a month for pizza delivery and $400.00 a month for over withholding indicated by the tax refund and subtracting $400 for health insurance yields a monthly net income of $2,765.72 per month. Making the adjustments noted above in her previously reported monthly expenses of $5,732.00 yields monthly expenses of $5,192.00 for a negative net monthly income of $2,426.28.

## II.  DISCUSSION

### A.  Support Claim – § 523(a)(5)

11 U.S.C. § 523(a)(5) provides that a debtor is not discharged from any debt-

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . ., but not to the extent that-
> (A) . . .
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law.  *See Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir. 1983).  A divorce decree's characterization of an award as maintenance or alimony does not bind a bankruptcy court.  *Id.*  In order to determine whether an award represents a property settlement or a maintenance obligation, a court must look to the function an award was intended to serve.  *See Kruger v. Ellis (In re Ellis)*, 149 B.R. 925, 927 (Bankr. E.D. Mo. 1993).  The burden of proof under section 523(a)(5) is on the party asserting that the debt is nondischargeable.  *Lineberry v. Lineberry (In re Lineberry)*, 9 B.R. 700, 706 (Bankr. W.D. Mo. 1981).

Factors considered by the courts in making this determination include: the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary, the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and, whether it would be difficult for the former spouse and children to subsist without the payments. *In re Tatge*, 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997); *Schurman v. Schurman (In re Schurman)*, 130 B.R. 538, 539 (Bankr. W.D. Mo. 1991) (citing *In re Gianakas*, 917 F.2d 759 (3d Cir. 1990)).  Exceptions from discharge for spousal and

child support deserve a liberal construction, and the policy underlying § 523 favors the enforcement of familial obligations over a fresh start for the debtor, even if the support obligation is owed directly to a third party. *See Holliday v. Kline (In re Kline),* 65 F.3d 749 (8th Cir. 1995); *Williams v. Kemp (In re Kemp),* 242 B.R. 178, 181 (B.A.P. 8th Cir. 1999), *aff'd* 232 F.3d 652 (8th Cir. 2000).

The obligation to pay a percentage of the unreimbursed medical expenses is included in the Separation and Property Settlement Agreement incorporated into the Decree of Dissolution. Specifically, it is in that portion of the Separation Agreement relating to the parenting plan for the children. Placement of the medical costs provision within the parenting plan indicates that the payment was intended as child support. *See In re Rice*, 94 B.R. 617, 618 (Bankr. W.D. Mo. 1988) (taking into account the placement in the decree of the support provision in determining its function). The Court is also persuaded that the obligation was intended as support by the fact that Debtor would otherwise have paid a higher level of child support and that the child support amount was adjusted downward in consideration of the fact that he was assuming an obligation to pay a percentage of the children's unreimbursed medical expenses. *See Moeder*, 220 B.R. at 55 (finding divorce court order that ordered debtor to pay monthly child support plus 78% of all unreimbursed medical expenses intended as support); *Morgan v. Woods (In re Woods)*, 309 B.R. 22 (Bankr. W.D. Mo. 2004) (non-covered medical expenses debtor was ordered to pay in dissolution proceeding were intended to serve function of child support). Clearly, as other courts have held, medical, dental, orthodontic, endodontic, prescription, optical, psychiatric, psychological, nursing, counseling and other healthcare expenses are "the necessities and ordinary staples of everyday life." Thus, the non-covered medical costs constitute support. *See Spurgeon v. Spurgeon (In re Spurgeon)*, 80 B.R. 477, 479 (W.D. Mo. 1986) (*citing In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983) (for the proposition

that provisions to pay expenditures for the necessities and ordinary staples of life may reflect a support function).

B.  Non-Support Claim – § 523(a)(15)

Section 523(a)(15) provides:

A discharge under section 727. . . does not discharge an individual debtor from any debt

> not of a kind described in paragraph (5) [alimony, maintenance or support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . unless-
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and , if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business, or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

Section 523(a)(15) is essentially an exception to an exception to discharge.  The section creates a rebuttable presumption that debts incurred in the course of a divorce are nondischargeable, subject to two exceptions: the debtor's inability to pay the debt or that the benefit to the debtor of discharging the debt outweighs any detriment to the ex-spouse. *O'Shaughnessy v. O'Shaughnessy (In re O'Shaughnessy)*, 301 B.R. 24, 29 (Bankr. N.D. Iowa 2003); *Lumley v. Lumley (In re Lumley)*, 258 B.R. 433, 436 (Bankr. W.D. Mo. 2001).

Initially, the creditor must establish that a debt is one that falls within the scope of paragraph (15)--i.e., the creditor must establish that the debt was incurred in the course of a divorce or separation. The burden of proof then shifts to the debtor to establish that the debt is dischargeable because the conditions set forth in either subparagraph (A) or subparagraph (B) exist. *See Fellner*

*v. Fellner (In re Fellner)*, 256 B.R. 898, 902 (B.A.P. 8th Cir. 2001); *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 56 (B.A.P. 8th Cir. 1998); *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 970 (Bankr. W.D. Mo. 1997); *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr. W.D. Mo. 1995); *Lumley*, 258 B.R. at 436. Here, Plaintiff submitted a copy of the Decree of Dissolution and the Judgment of Modification at the trial which Debtor did not dispute as a judgment that was entered in the course of the parties' dissolution.[3] Therefore, the Court finds that the Plaintiff has established that the debts to her were incurred in the course of a dissolution, and the burden of proof thus shifts to Debtor to establish that they are dischargeable under § 523(a)(15)(A) or (B).

The first defense available to a debtor is that the debt is dischargeable because he lacks the ability to pay the debt from income not reasonably necessary for the support of the debtor or a dependent of the debtor. *See* 11 U.S.C. § 523(a)(15)(A). The inquiry focuses primarily on a comparison of the debtor's income and expenses and whether the Debtor's expenses are reasonably necessary. *See In re Jodoin*, 209 B.R. 132 (B.A.P. 9th Cir. 1997). An inability to pay exists if excepting the debt from discharge would "reduce a debtor's income to below a level necessary for the support of the debtor and debtor's dependents." *In re Brown*, 302 B.R. 637 (Bankr. N.D. Iowa 2003). Because the language of § 523(a)(15)(A) is substantially the same as § 1325(b)(2)[4], most

---

[3] Plaintiff's Exs. 1, 3.

[4] That section provides:
"[D]isposable income" means income which is received by the debtor and which is not reasonably necessary to be expended-
    (A) for the maintenance or support of the debtor or a dependent of the debtor. . . and
    (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
11 U.S.C. § 1325(b)(2).

courts use the same disposable income test for both sections. *Moeder*, 220 B.R. at 54-55. Thus, in assessing the debtor's ability to pay, the court should determine whether, after paying "reasonably necessary" expenses, the debtor has assets or income sufficient to pay the obligation in question by taking into consideration the debtor's entire economic circumstances.

The Court is not restricted to assessing the debtor's income and expenses at the time of filing or even at the time of trial. A debtor's present and future circumstances may be examined in determining disposable income for purposes of § 523(a)(15), and the court's inquiry is not limited to the debtor's financial strength at any single moment in time. *See Grunwald v. Beck (In re Beck)*, 298 B.R. 616, 623 (Bankr. W.D. Mo. 2003); *Fureigh v. Haney (In re Haney)*, 238 B.R. 432, 435 (Bankr. E.D. Ark. 1999) ("The appropriate analysis includes a view of the debtor's future financial situation, including an ability to make minimal monthly payments on the debt, rather than a static view of the debtor's current ability to pay the debt."); *Johnson v. Rappleye (In re Rappleye)*, 210 B.R. 336, 340 (Bankr. W.D. Mo. 1997) ("Ability to pay under § 523(a)(15) does not necessarily mean at the time of trial, but requires the Court to consider debtor's future earning capacity." (*citing Florio*, 187 B.R. at 656-658)).

1. Debtor's Ability to Pay

Debtor moved to Utah in September 2005 and in April 2006 became employed by Delta Insulation, Inc. as its general manager. Apparently, Debtor had sought to establish the company on his own, but lacked the resources to do so. He recruited two investors for whom he prepared a business plan, which they retained him to implement. His gross salary is $4,000.00 per month with an additional $500 per month as a car allowance. His most recent pay stubs indicate that he receives a net payment of $1,433.62 twice per month for a total net monthly income of $2,867.24. Additional

recent deductions from that are $320.00 per month for health insurance and $300.00 for repayment of a loan made to him by his employer. That loan, in the amount of $5,000.00 funded the lump sum payment toward the child support arrearage which Debtor was obligated to make pursuant to the modification judgment. From the remaining $2,247.24, Debtor pays $1,400.00 per month in child support, $100.00 per month toward the arrearage on the child support pursuant to the agreement contained in the modification judgment and $100.00 a month toward the balance of unreimbursed medical expenses. Deducting those obligations and adding the car allowance leaves the Debtor with $1,147.24 a month. The Debtor testified, however, that he also now has an automobile payment in the amount of $273.00 a month and pays $25.00 a month to the IRS on taxes for the year 2005 which he was unable to pay at the time he filed his return. These additional $298.00 in deductions leave the Debtor with $849.24 with which to pay other recurring monthly expenses.

Debtor has no housing expense as he lives with his daughter and her husband and pays no rent. The income and expense statement Debtor submitted to the state court in connection with the modification proceeding showed total monthly expenses of $2,222.00. Included in that sum is the car payment. Deducting that amount leaves recurring monthly expenses of $1,949.00. In addition, the Debtor testified that his health insurance is $20.00 per month less than it was and his life insurance payment is slightly less. This Court might make adjustments to certain discretionary expenditures as the Debtor spends approximately $185.00 per month on recreation, sports, "activities," vacations and gifts. Even the combined effect of these potential adjustments, however, would not provide the Debtor with positive monthly net income. Accordingly, the Court concludes that the Debtor lacks the present ability to make payments to Plaintiff on the remaining indebtedness due pursuant to the Decree of Dissolution as modified.

However, as noted above, in making the determination whether Debtor has the ability to pay, the Court is not bound by the Debtor's present economic circumstances, but may consider his history, earning potential and the totality of his circumstances. Taking those other things into consideration, this Court concludes that Debtor has not satisfied his burden to demonstrate that he lacks the ability to pay the debts owed to Plaintiff. On cross examination, Debtor admitted that his salary for the last several years has been approximately $60,000.00, was up from that amount during the last year and that he received bonuses in addition. His income tax returns reflect that his adjusted gross income in the year 2004 was over $85,000.00. It was $63,919.00 for the year 2005, in which he was employed for only a portion of the year. Debtor terminated his employment in Kansas City voluntarily. He admitted on cross examination that had he not done so, he would have earned between $70,000.00 and $80,000.00 that year. Although the Debtor would like to have the Court believe that he was compelled to terminate his employment with his previous employer, the Court is not persuaded that was the case. He alleges that he quit because his previous employer was being "dishonest." On cross examination he listed the reasons for his resignation, indicating that his bonus had been reduced, his commissions cut and that there were "other issues" apparently relating to differentials in treatment between the Debtor's company and an affiliated company owned by the same parent. There is no evidence to indicate that his previous employer was engaged in illegal activity.

As to his present situation, after the resignation of a salesperson, Debtor is now, in addition to his tasks as general manager, performing that salesperson's tasks. He is, however, not paying himself a commission; nor has he made an adjustment to his salary to reflect his additional responsibilities. Debtor testified that his financial arrangement with this employer is designed "to

try and help the company become more successful," leaving the Court with the impression that he is more concerned about making economic sacrifices for the financial benefit of the company than discharging his responsibilities to his ex-spouse. The aggregate amount of the remaining indebtedness for which Debtor agreed to indemnify Plaintiff pursuant to the Dissolution Decree for the orthodontist bill, the deficiency on the vehicle and the property equalization payment is $19,198.45. If for the next several years Debtor continued to earn an income equivalent to the average income of approximately $60,000.00 he earned in the last several years, he would have approximately $12,000.00 more in gross income than he realizes presently. Deducting an allowance of approximately 25% for taxes, Debtor could have as much as $9,000.00 a year available with which to pay these debts which would permit him to discharge them in less than three years. Because the Debtor voluntarily terminated his previous employment, which would have afforded him the opportunity to make payment to Plaintiff on these debts, he has a history of earning substantially in excess of his current salary and he has failed to provide for appropriate compensation to himself for taking on additional responsibilities with the company, the Court finds that Debtor has failed to satisfy his burden of demonstrating that he is unable to satisfy Plaintiff's debts.

2. Balance of Hardship

The second defense available to a debtor is that the benefits to the debtor of discharging the debt outweigh the detrimental consequences to the creditor. *See* 11 U.S.C. § 523(a)(15)(B). An assessment of the benefits and detriments under § 523(a)(15)(B) requires an analysis of the totality of circumstances, not just a comparison of the parties' net worth. *Florio*, 187 B.R. at 658. The test necessitates comparing the lifestyles of both parties and making a determination to measure the

benefit of discharge to the degree of harm. *Schaefer v. Deppe (In re Deppe)*, 217 B.R. 253, 261 (Bankr. D. Minn. 1998).

Among the things the Court should consider in balancing the hardships are the parties' respective incomes, expenses, assets, liabilities, educational backgrounds, employment histories, earning capacities, health and family situations. In examining the evidence in the record on these issues, the Court concludes that Defendant has failed to satisfy his burden of establishing that the benefits to him of a discharge outweigh the hardship imposed on Plaintiff from losing the right to enforce her claims. On some issues, the Court has no information at all. For example, there is no evidence with respect to the parties' respective educational backgrounds or health status. Similarly, there is no evidence of assets and liabilities or net worth of Plaintiff. Consequently, the Court cannot compare the parties' respective abilities to apply assets to their liabilities or to ongoing expenses.

In other areas, the evidence tends to establish precisely the opposite of what Debtor would need to demonstrate in order to obtain a discharge of these debts. The evidence convinces the Court that Plaintiff's economic circumstances are, and likely will continue to be, more difficult than those of the Debtor. For example, Plaintiff has slightly lower gross and net incomes and significantly higher monthly expenses than does Debtor. While this Court has limited ability to project the future, the evidence of the parties' most recent earnings, including their tax returns and adjusted gross incomes for the last several years, suggests that Debtor has a much greater capacity to earn substantial income. Plaintiff's family situation is also more difficult than Debtor's. Although she receives some support from Debtor in a now modified amount, Plaintiff is living with and supporting six children. She has been required to work three different jobs in order to secure the income to pay

monthly living expenses, but is apparently still not able to satisfy all her reasonable monthly expenses on a consistent basis. In summary, the evidence simply does not permit the Court to conclude that the benefits to the Debtor of discharging these debts outweigh the detrimental consequences to Plaintiff. Accordingly, the Court finds the Debtor has failed to establish his entitlement to a discharge of these debts under § 523(a)(15)(B).

For all the reasons described above, the Court finds that the unreimbursed medical expenses Debtor was ordered to pay in the dissolution proceeding were intended to and serve the function of child support and are therefore nondischargeable pursuant to § 523(a)(5). The Court further finds that the Debtor has not met his burden proving that he lacks the ability to pay Plaintiff's claims (including the unreimbursed medical expenses) or that the balance of hardship favors granting a discharge of those debts. A separate order will be entered as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure.

DATED:     September 19, 2006            /s/ Dennis R. Dow
                                        HONORABLE DENNIS R. DOW
                                        UNITED STATES BANKRUPTCY JUDGE

Copies to:
Nancy L. Jackson
Judith L. Berry